UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH DOBBINS,

    Plaintiff,

v.                                                            Case No. 2:08-cv-290
                                                                 HON. GORDON J. QUIST

GEORGE CRAYCRAFT, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Keith Dobbins, an inmate at the Kinross Correctional Facility (KCF), originally filed this complaint on December 4, 2008. On January 14, 2009, the court ordered service of the complaint on George Craycraft. Defendant Craycraft filed a motion for summary judgment on June 18, 2009, which was granted by the court on March 22, 2010. Plaintiff subsequently filed an appeal to the Sixth Circuit Court of Appeals, which was granted with regard to Plaintiff's retaliation claim on May 17, 2011. In granting Plaintiff's appeal, the Sixth Circuit indicated that the grant of summary judgment without giving Plaintiff the opportunity to conduct discovery was an abuse of discretion. *See Dobbins v. Craycraft, et al.*, COA No. 10-1886, docket #63 and #64. The Sixth Circuit stated that Plaintiff had "offered to present evidence that Craycraft made up the incident in the dining room and then fabricated or backdated the other incidents of poor performance after hearing about the grievances." *Id.* at p. 5. This court consequently reopened the case and reinstated Defendant's motion for summary judgment.

On July 20, 2011, the court ordered that in accordance with the remand, Plaintiff would have until September 19, 2011, to conduct discovery, and until October 11, 2011, to respond to the motion for summary judgment. Plaintiff has had the opportunity to conduct discovery and has now filed a response to the motion for summary judgment (docket #82). In addition, Defendant has filed a reply to the response (docket #85) and the matter is ready for decision.

As previously noted, Plaintiff alleges that he began working in the KCF kitchen as an unskilled maintenance worker on August 26, 2005. In January of 2006, Plaintiff was promoted to semi-skilled salad prep/cook under the supervision of Food Service Supervisors Clegg and Defendant Craycraft. On August 6, 2006, Plaintiff was promoted to the lead position by Supervisor Clegg based on Plaintiff's "Food Tech" certificate and on-the-job training skills.

On September 7, 2006, Plaintiff filed a grievance on Defendant Craycraft asserting an abnormality in the food safety protocols and verbal abuse. On September 13, 2006, Plaintiff was informed by Assistant Food Service Director Carrick that Defendant Craycraft was irate about the grievance. Plaintiff states that Defendant Craycraft then began to harass him by insinuating that Plaintiff was not up to the task of lead position. Defendant Craycraft also required Plaintiff to train two new employees simultaneously in violation of policy, added excessive work to Plaintiff's assignments, constantly accused Plaintiff of moving too slowly, and delegated authority over Plaintiff to the prisoners that Plaintiff had been training. On September 15, 2006, Plaintiff sent a kite to Assistant Food Service Director Carrick complaining of Defendant Craycraft's harassment. Plaintiff did not receive a response. On October 5, 2006, Plaintiff filed a grievance on Defendant Craycraft for retaliation and requested that he be switched to a different shift to avoid further

problems with Defendant Craycraft. On October 10, 2006, Defendant Craycraft suspended Plaintiff without reason.

On October 24, 2006, Defendant Besteman showed Plaintiff the final work evaluation for October of 2006, which contained a number of fabrications against Plaintiff by Defendant Craycraft. Plaintiff could not explain the alleged work violations except to assert that he was being retaliated against by Defendant Craycraft. Therefore, Plaintiff was terminated from his food service job. On October 25, 2006, Plaintiff filed a grievance against Defendant Besteman for not giving him a 30 day probationary period before terminating him from his job assignment. Plaintiff was confined to his room for approximately three months until a new job assignment became available on yard crew. On August 6, 2008, Plaintiff filed a grievance against Defendant Besteman for the denial of due process. Plaintiff states that Defendant Craycraft violated his First Amendment right to be free from retaliation.

Plaintiff filed a motion to compel discovery on October 6, 2011 (docket #74). On October 28, 2011, Plaintiff filed a "Second Affidavit in Support of Motion to Compel Discovery" (docket #78). Plaintiff attaches copies of work assignment evaluations to his affidavit as Exhibit C. These evaluations are dated between October 19, 2005, and October 10, 2006. From January 18, 2006, until September 19, 2006, the evaluations were completed by non-Defendant Supervisor Clegg and indicated increasing problems with Plaintiff's work performance (docket #78, Exhibit C, pp. 5-13). Finally, an evaluation completed by Defendant Craycraft on October 10, 2006, indicated that after Plaintiff was found sleeping in the dining room during his shift, he should be removed from his job assignment for failure to comply with basic food service requirements (docket #78, p. 14). Defendant Craycraft also noted that between March 11, 2006, and October 10, 2006, Plaintiff had

been late, failed to follow instructions, argued with staff, was slow and unmotivated, and had been repeatedly admonished regarding his need to improve on his work performance (docket #78, p. 14).

In the order denying the motion to compel, the court stated:

Plaintiff argues that defendant Craycraft refused to respond to questions 12, 14 and 16 of Plaintiff's Second Request For Production of Documents, Things, and Answers to Interrogatories. Defendant responds that plaintiff never sought concurrence from counsel before filing this motion and, if he had, some of the issues could have been resolved without a motion. As to question 12, which asked for plaintiff's work evaluations, defendant originally provided evaluations from January 2006 until defendant was terminated. Defendant has now provided five additional evaluations in a supplemental response after plaintiff filed this motion. Defendant indicates that there are no more evaluations in defendant's possession or control.

Plaintiff requested defendant's work history in question 14, including copies of all complaints, judgments, grievances, restraining orders, reprimands, etc., filed against defendant. Defendant Craycraft has asserted that he was not disciplined in connection with the facts of this case and that the other requested information is not relevant to this case. The information requested is not relevant and there exists no reason for plaintiff to have access to defendant's personnel file. Similarly, plaintiff's unrestricted request for grievances filed against defendant is burdensome and could not lead to admissible evidence in this case.

Question 16 asks for an admission regarding the Hazard Analysis of Critical Control Points (HACCP) as standards for KCF Food Safety Programs. Plaintiff's lawsuit concerns whether defendant retaliated against plaintiff after a grievance filing by dismissing plaintiff from his work assignment. Plaintiff has not explained how food safety preparation is relevant to his lawsuit. Moreover, if standards regarding food safety preparation are relevant to this lawsuit, plaintiff can present those standards without seeking an admission or denial from defendant as to whether certain standards apply at KCF. The issue in this case is whether plaintiff was performing his job in a satisfactory manner or whether he was retaliated against. Plaintiff's own affidavit recognizes that defendant's admission regarding these standards is irrelevant to plaintiff's claims. As plaintiff points out, the standards speak for themselves.

> Because plaintiff has failed to comply with Local Rule 7 and because plaintiff has failed to establish that defendant's responses were inadequate, plaintiff's motion (Docket #74) is DENIED.

(Docket #81.)

In responding to the motion for summary judgment, Plaintiff fails to offer any additional evidence in support of his assertion that Defendant Craycraft lied about the incident in the dining room and then fabricated or backdated the other incidents of poor performance after hearing about the grievances.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.

1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that he was terminated from his position because he filed grievances against Defendant Craycraft. Plaintiff began having problems with Defendant Craycraft after Plaintiff was promoted to Salad Lead Worker. Plaintiff filed a grievance after Defendant Craycraft told Plaintiff that he was improperly preparing a potato salad on September 6, 2006. Defendant Craycraft told Plaintiff to cool down the potatoes and pasta by using ice before mixing in additional ingredients. Plaintiff put the ice directly into the potato salad mix instead of placing the ice in a different bowl and then placing the warm potato salad mix bowl into the ice bowl to cool the mix. After Defendant discovered that Plaintiff put the ice directly into the potato salad, Defendant asked Plaintiff how he planned to get the ice back out. Defendant felt that Plaintiff should have known as the lead salad worker how to ice down a potato salad mixture. Plaintiff filed a grievance concerning

this incident complaining that Defendant was harassing Plaintiff. It appears, based upon Plaintiff's responsive brief, that Plaintiff believes that Defendant was wrong to be concerned about cooling the mixture before adding other ingredients to the potato salad. Ultimately, Defendant terminated Plaintiff for failing to follow instructions. Plaintiff's Worker Profile documents some of the problems that Defendant was having with Plaintiff:

> 4/10/06 failed to put salads under refrigeration. G. Craycraft
> 8/6/06 Salad Lead Worker
> 8/14/06 Did not make sure the taco salad dressing was made as called for on production sheet. G. Craycraft
> 9/6/06 Failed to properly cool pasta and potato salad as instructed. G. Craycraft
> 9/6/06 Arguing with Staff G. Craycraft
> 9/7/06 Spoken to concerning doing his job in a timely and sanitary manner. He's not to be standing around watching others. G. Craycraft
> 9/19/06 evaluation comments made needs to be more motivated to show he can handle lead spot. K. Clegg
> 9/19 thru 9/20/06 Medical Lay in
> 10/3/06 Still working slow. Assigns himself to less amount of work. Told to pump butter, began to clean sink in work area even though work was not completed. G. Craycraft
> 10/4/06 Spoken to about being more motivated, doing his share of work, instead of leaving it for coworkers. Discussed being realigned. K. Clegg
> 10/7/06 spoken to again showing him that he is not producing. Dobbins acknowledged that he understood, however he refused to sign the tracking sheet. G. Craycraft
> 10/10/06 Did not follow instructions given to him concerning a salad prep. Told to put in celery, he did not put in the celery, and said he wasn't going to put in the celery. G. Craycraft
> 10/10/06 sleeping in the Dining Room. G. Craycraft
>
> Terminated for inability to follow basic Food Service requirements.

(Defendant's Exhibit 2-K, docket #35-4.)

Defendant Craycraft states that he spoke with Plaintiff on multiple occasions to improve job performance, but Plaintiff was simply unable to complete his job responsibilities in an

acceptable manner as Salad Lead Worker. Defendant Craycraft indicates that Plaintiff was a probationary worker and could be terminated in accordance with policy for any reason during the probationary time period.

In his response to the motion for summary judgment, Plaintiff offers his affidavit in which he asserts that this court improperly weighted the evidence submitted by Defendant in support of the motion for summary judgment. However, Plaintiff fails to submit any new evidence showing that Defendant acted with a retaliatory motive. As noted by the Sixth Circuit in their decision to remand, Plaintiff had previously filed an affidavit in which he identified three witnesses who allegedly could contradict Defendant's assertion that Plaintiff had fallen asleep on the job and who could verify that Defendant was upset about the grievances and wished to fire Plaintiff. *Dobbins v. Craycraft, et al.*, COA No. 10-1886, p. 3, docket #64. Despite being given an opportunity for discovery, Plaintiff has failed to provide statements by any of these witnesses.

As noted by Defendant in his reply (docket #85), Plaintiff's affidavit implicitly admits falling asleep during his work assignment, stating that he was "terminated solely for a non-existing, non-work related rule infraction (sleeping on lunch break)." (Docket #83, ¶ 5.) Nor has Plaintiff provided evidence that Defendant fabricated or backdated incidents of poor performance after hearing about the grievance.

In the opinion of the undersigned, Defendant Craycraft has presented valid reasons for Plaintiff's termination. Plaintiff's filing of grievances cannot be the basis for insulating himself from a valid termination of his employment as Salad Lead Worker. It is clear that Plaintiff's conduct in performing the job functions as Salad Lead Worker was the sole cause of his termination.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #34) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   August 2, 2012